**G. A. BROWN et al., Appellants,**

**v.**

**A. C. GRAY, Appellee.**

**No. 4295.**

Court of Civil Appeals of Texas.

Waco.

Nov. 5, 1964.

Rehearing Denied Nov. 19, 1964.

Mays, Jacobs & Pevehouse, Corsicana, for appellants.

William J. McKie, Corsicana, for appellee.

WILSON, Justice.

Defendant appeals from judgment on a jury verdict. It is not clear whether the case was tried on a breach of contract theory or as a tort action. In our opinion no cause of action was established against defendant on either basis.

Appellant Brown owned a 366 acre farm. Appellee Gray was the tenant for the year 1958 of 108 acres under an oral rental agreement. He raised cotton and maize on the tract. For the year 1959 Gray orally rented 103 acres, the cotton allotment, on which he planted cotton. He was not a tenant on any other of Brown's land. In September, 1958 Gray and Brown as "pro-

ducers" entered into a written "soil bank conservation reserve" ("A. S. C.") contract with the U. S. Department of Agriculture for the "contract period" beginning 1959 and ending 1963. Plaintiff Gray was named "operator" in the agreement. By its terms 169.5 acres of a 301-acre "soil bank base" were subjected to conservation reserve, or "placed in the soil bank."

Section 4(c) of the contract provided that the "annual payment to be paid" under the soil bank program "shall be divided among the producers on the farm." Section 8(c) recited: "If the county committee" (See 7 U.S.C.A. § 1801 et seq.; 16 U.S.C.A. § 590h) "is notified in writing, prior to making payment under an existing contract to a tenant (including a tenant operator) or to a sharecropper that such tenant or sharecropper is no longer on the farm, the county committee shall determine the division of compensation between the original tenant or sharecropper and the successor tenant or sharecropper, or between the original tenant or sharecropper and the landlord or operator, if the tenant or sharecropper is not replaced, on a basis which it determines to be fair and equitable." (See 7 U.S.C.A. § 1809. Department Regulations are not in evidence).

Gray's 1959 cotton crop failed, and his oral agreement with Brown to rent the cotton land was not renewed for the year 1960. Instead, Brown rented the land to another tenant, Gillen. In April, 1960 the county committee wrote Brown that it had information he had "changed the tenant" on his farm, and requesting his written statement as to whether Gray "is, or is not the operator" with "the interest as indicated" in the contract; and if not, the name and address of the party who replaced Gray. Brown promptly replied, "Gray is not the operator" of the farm, and "does not have the interest indicated" by the contract, and "has no interest or any part of my land in any way." He gave the new tenant's name, stating Gillen had replaced Gray in 1959. He later signed a statement concerning his reasons for having changed tenants.

Gray invoked action of the county committee in April, 1960. The committee conducted hearings at which Gray and Brown appeared. Gray wrote the committee that "we had an oral understanding" that Gray was to "break, seed and keep the land qualified" for five years. He told the committee he did not know a change in his interest "in the cotton" land would affect "his interest in the soil bank land, or change his interest in the contract." The committee decided the new tenant, Gillen, was entitled to share in the annual payment "to the same extent Mr. Gray would have shared" because Gray did not rent the cotton land for the year 1960, and the tenant to whom Brown rented was not the committee's concern. Gray then appealed to the State A. S. C. committee, which decided the successor tenant was entitled to the payments which Gray would have been entitled "had he remained in possession of the farm." The county committee thereafter approved a 1960 contract executed by Brown in which Gillen was substituted for Gray. Two years later it approved another contract in which the Vest brothers were named operators. Soil bank payments were made to Gillen and the Vests after 1959.

In December, 1960, however, in another state district court suit against Brown and Gillen, Gray obtained a declaratory judgment that he was "entitled to payments under said contract for the full five year period" and that Brown "cannot, at his will, cause the payments under the terms of said contract, to plaintiff, to be terminated." The judgment also continued in effect a temporary injunction restraining Gillen, the tenant who replaced Gray, from "cashing or otherwise disposing of the payments involved in this case."

In the face of this injunction, and knowing he risked commitment for contempt, Gillen testified, he cashed the soil bank payment check on advice of the county committee. "They said it was mine, and you all had three days in jail and a hundred dollar fine against it."

Gray's petition in the present action against Brown alleged the terms of the above judgment, and that thereunder he was entitled to the soil bank payments. It was alleged Brown caused payments to Gray "to be terminated by executing an A. S. C. contract" with Gillen for the years 1960 and 1961, and with the Vests for 1962 and 1963; and that Brown was "liable to plaintiff for repudiating and breaching said contract" for the amounts paid to Gillen and the Vests.

The jury found in answer to an issue submitted that Brown "without good reason did cause the termination of the soil bank contract in question", and judgment was rendered for Gray. The form of this issue is not a matter of complaint.

Gray does not seek to recover from his successor tenants, Gillen and the Vest brothers, for the payments the Department of Agriculture made to them. They are not parties (although originally joined, and dropped), and neither are the Secretary, the Department or the committee.

Whether the action be regarded as one for "breach" or repudiation of contract, or as one sounding in tort, the damages alleged by plaintiff did not result from any actionable conduct of Brown. Although the global issue submitted inquired whether Brown "did cause" termination of the soil bank contract, the only pleaded conduct was his "executing an A. S. C. contract" with Gillen and the Vests. In determining causal connection between this and Gray's alleged damage, we examine the sequence of events.

It is true that Brown did not rent the cotton land to Gray for the year 1960, and that he let it to another tenant. This, Gray concedes, he had full right to do. Gray admits he "did not have his cotton land rented for 1960," or succeeding years.

The renting of the cultivated portion of the farm is not a basis of complaint. When the county committee learned that Brown had "changed the tenant" on his farm, it asked him for a written report, which Brown made. It is not claimed that this report caused Gray damage. It obviously did not do so, for it evoked Gray's contention before the committee that he was entitled to the "operator's" share of soil bank payments for five years, and it resulted in extended hearings and efforts by the committee to resolve the problems created by Gray's claim. Gray voluntarily invoked the committee's decision, appeared and participated in its hearings and deliberations which culminated in a decision that it should approve the making of a 1960 contract "to replace" the 1959 contract naming Gray as operator. A decision on his claim was sought by Gray under the contractual provision concerning division of compensation in such a case as this. Gray appealed to the State A. S. C. committee which determined that his replacement as tenant by Brown "did not constitute a violation" of the 1959 contract, and the new tenant shared in soil bank payment "to the same extent Mr. Gray would have shared had he retained possession of the farm." The committee decision prompted the making of new contracts.

Brown did not initiate the hearing. He did not, so far as the record reflects, invoke committee action. He met once by invitation with the committee who told him "they would study it out" and let him know. "The next thing I knew," he testified, "the contract came in for me to sign." Vest testified that when he sent for his marketing cards "they told me I had to get on the soil bank land or the money would go back to the government," because the "soil bank land and the cotton land went together."

In December, 1960 after the committee had made its decision, and after the new contract had been signed, but before the successor tenant, Gillen, cashed any payment check, Gray obtained a judgment against both Brown and Gillen which adjudicated the rights of Gray and Gillen to the tenant's share of the soil bank payments, protecting Gray by injunction.

Gray seeks to recover from Brown the amount of payments made by the Department of Agriculture to Gillen and the Vests, asserting that Brown's execution of new A. S. C. contracts caused him to be deprived of the payments. Under this record that cause is too remote to be a cause in law.

It is not necessary for us to construe the A. S. C. contract, and we do not do so. Ownership of the tenant's payments is not an issue in this action solely against Brown, who received none of such proceeds. This is not a suit on a judgment. We do not imply opinion as to authority, if any, of the committee to interpret the contract or as to the extent of its authority to determine legal rights of the parties.

The judgment is reversed and judgment here rendered that plaintiff take nothing.